**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SCOTT W. BROTHERS,**

          **Plaintiff,**

-against-                 **05-CV-1265**

**FREDERICK J. AKSHAR, II; DAVID E.**
**HARDER, SHERIFF; BROOME COUNTY**
**SHERIFF'S OFFICE; and the COUNTY OF**
**BROOME,**

          **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

  Plaintiff commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and the common law of the State of New York after being shot by Defendant Frederick J. Akshar, II, a deputy sheriff with the Broome County Sheriff's Office. Presently before the Court is Defendants' motion for summary judgment. Plaintiff has opposed the motion.

**II. BACKGROUND**

  In the afternoon of February 7, 2005, Broome County Sheriff's Office Civil Deputy Jesse Genter, IV was present at a trailer park at 4 King Road, Colesville, N.Y. serving an eviction notice. He was approached by a young woman who advised that her mother's

1

former boyfriend had entered the mother's trailer home on Lot 31 without authorization and was refusing to leave. When Deputy Genter investigated, he encountered Plaintiff Scott W. Brothers in the trailer home at Lot 31. Plaintiff claimed that he was a resident of the trailer home and produced a piece of mail addressed to him at Lot 31 substantiating his claim. The mother, Susan Martinez, claimed that she was the lawful resident of Lot 31, that her relationship with Plaintiff had ended, and that she wanted Plaintiff to leave the trailer. At approximately 3:00 p.m., Deputy Genter called the patrol supervisor, Sergeant Edward Waffle, and requested assistance. Waffle Aff. ¶ 9. Sgt. Waffle dispatched Patrol Deputy Julie Fleming to provide assistance and backup to Deputy Genter. Id.; Fleming Aff. ¶ 6; Defs. L.R. 7.1(a)(3) Statement of Material Facts ("DSMF") ¶ 10.

When Deputy Fleming arrived at Lot 31, Genter was outside the trailer home. Genter advised Fleming of the situation and mentioned that Plaintiff might be intoxicated or on drugs. Fleming Aff. ¶¶ 8-10. While Fleming and Genter were speaking, Fleming heard a door slam. Id. ¶ 11. Fleming and Genter entered the trailer and spoke to Martinez who was in the kitchen area with her two daughters. Id. ¶ 12. Martinez told Fleming that Plaintiff had gone into the bedroom and slammed the door, but also stated that she did not believe Plaintiff had any weapons. DSMF ¶ 11; Fleming Aff. ¶¶ 13-15. Martinez then proceeded to explain to Fleming that she resided at the Lot 31 trailer home; that her relationship with Plaintiff had ended because she was "trying to remain clean and sober" yet Plaintiff was using drugs and alcohol; that Plaintiff was, at the time, intoxicated; and that she wanted Plaintiff to leave the trailer. DSMF ¶¶ 12, 13.

Plaintiff refused to come out of the bedroom so Fleming engaged Plaintiff in a conversation through the closed bedroom door to find out his position on the dispute.

2

DSMF ¶ 14. When Martinez told Fleming that her relationship with Plaintiff "was over," Plaintiff called out: "I'll show you how its going to be over." Id. ¶ 15. Plaintiff then insisted that Fleming open the door so he could show her "how it's going to be over." Id.; Fleming Aff. ¶ 22. Fleming stood to one side of the door and opened it part of the way. DSMF ¶¶ 16-17. She observed Plaintiff laying on his back on the bed with a shotgun on his chest. Id. ¶ 17 The shotgun was positioned so that the barrel was under Plaintiff's chin and his hand was near the trigger. Id. Fleming drew her weapon to a "low ready position" and backed away from the bedroom door to the front door entrance where she could still see into the bedroom. Id. ¶ 18; Fleming Aff. ¶ 28. Genter also immediately drew his weapon and evacuated Martinez and her two daughters from the trailer home. DSMF ¶ 19; Fleming Aff. ¶ 27.

Outside, Deputy Genter called Broome County Communications to advise of the circumstances. DSMF ¶ 20. He reported that Plaintiff was intoxicated, armed with a shotgun and threatening suicide, and that Deputy Fleming was inside the trailer home speaking with Plaintiff. Id. Broome County Communications dispatched Sgt. Waffle to the scene at approximately 3:45 p.m. Id. ¶ 21. Broome County Sheriff's Office Deputies Akshar, Sakowski and Balmer heard the report over their radios and also responded to the scene. Id. ¶ 21; Plaintiff's L. R. 7.1(a)(3) Statement of Material Facts ("PSMF") ¶ 21.

Upon his arrival, Sgt. Waffle entered the trailer and heard Deputies Genter and Fleming asking Plaintiff to put down his weapon. Plaintiff refused to do so. DSMF ¶ 24; PSMF ¶ 24; Waffle Aff. ¶ 15. Sgt. Waffle observed Plaintiff on the bed with the shotgun pointed at his chin and attempted to speak to Plaintiff himself. Waffle ceased his attempt when Plaintiff seemed to became annoyed and belligerent. DSMF ¶ 25; PSMF ¶ 25;

3

Waffle Aff. ¶ 18.  When Deputies Akshar and Sakowski entered the trailer home, Sgt. Waffle assigned them to determine whether Plaintiff could be observed from the outside of the rear of the trailer home.  DSMF ¶ 26.  Akshar and Sakowski exited the trailer home at which time Deputy Fleming re-entered and took up a position to Waffle's left "closer to the wall opposite the door to the main front entrance."  Waffle Aff. ¶ 20.  Sakowski returned and reported that he could not get a view of Plaintiff from outside the rear of the trailer home. DSMF ¶ 27; Waffle Aff. ¶ 21.  Sgt. Waffle ordered Sakowski to evacuate any civilians in nearby trailer homes.  DSMF at ¶ 28.

Akshar, who was behind the trailer, re-entered the trailer home from the rear to provide cover and assistance to Fleming and Genter who were in the living room of the trailer home speaking to Plaintiff. Id. ¶ 31; see PSMF ¶ 31 (Deputy Akshar was not ordered by a supervisor to enter the trailer home).  Upon seeing Deputy Akshar enter, Deputy Genter, who was not wearing body armor, left the trailer home. DSMF ¶ 32; PSMF ¶ 32.  Waffle told Akshar to cover Fleming and left the trailer home to obtain a phone. Waffle Aff. ¶ 24.

Outside, Sgt. Waffle contacted Broome County Communications to ensure that the circumstances had been relayed up the chain of command to the Undersheriff.  DSMF at ¶ 29.  While on the phone with the dispatcher, Waffle "discussed the establishment of an outer perimeter and the withdrawal of officers in the living room of the trailer to a position at the front doorway if no rapport could be established with Plaintiff and requested that a negotiator respond." Id.

Inside the trailer home, the conversation between Fleming and Plaintiff stopped. Fleming Aff. ¶ 40; Akshar ¶ 44.  Deputy Akshar attempted to speak with Plaintiff to get him

4

to put down his gun. See PSMF ¶ 34. In doing so, Deputy Akshar positioned himself in the living room so that he was able to observe Plaintiff. Id. at ¶ 34. Akshar asked Plaintiff to put down the gun, id. at ¶ 35, telling Plaintiff that if he put down the gun and came out of the bedroom everything would be okay. See id. ¶ 34. Plaintiff then stated: "Everything's going to okay once I end it, and I'm going to end it right now." DSMF ¶ 36; Akshar Aff. ¶ 47. Plaintiff then sat up in bed, turned, moved the shotgun from under his chin and pointed it in the direction of Akshar and Fleming. DSMF ¶ 37; Akshar Aff. ¶ 48; see Fleming Aff. ¶¶ 41-44.[1] Believing that Plaintiff intended to fire the shotgun at him or Fleming, "Deputy Akshar discharged his handgun 15 times in the space of no more than 5 seconds with the intent of defending himself and eliminating the threat to his life and that of Deputy Fleming." DSMF ¶ 39. Deputy Fleming also took defensive measures upon seeing Plaintiff move in the bedroom. See Fleming Aff. ¶ 46 ("At the same time I noticed Mr. Brother's movement, I raised my weapon, as well. While he was moving I could not see what Brothers was doing with the shotgun."), ¶ 47 ("I moved backward behind the kitchen counter, in an effort to obtain cover."). As he fired his gun, Deputy Akshar retreated back across the living room and away from the bedroom. DSMF ¶ 40. Toward

---

[1] Deputy Fleming attests as follows:

41. Deputy Akshar attempted to converse with Scott and, at one point, Scott Brothers made comments to the effect of "do the autopsy and we'll see that there are no drugs in my system." I took this as an indication that Mr. Brothers might harm himself.

42. Brothers went on to say "find my kids and tell them I love them."

43. The next thing I remember is seeing Scott Brothers' head move as if he was moving from a lying down position to a seated position.

44. I could not see the gun, only the top of Brother's head.

Fleming Aff. ¶¶ 41-44.

5

the end of Deputy Akshar's fire, at the point where his "weapon [went] dry,"[2] Plaintiff "let[] out a moan . . . his body and arms flail[ed] to his right." PSMF ¶ 42. Akshar immediately reloaded his weapon and brought his gun back on Plaintiff. Id.; see also DSMF ¶ 43. Having determined that Plaintiff was no longer a threat, Akshar did not fire again. PSMF ¶ 42; DSMF ¶ 43. The shooting occurred while Sgt. Waffle was still on the phone with the dispatcher, and the rapid succession of shots were heard by the dispatcher. See Wrobleski Aff. ¶ 9 & Ex. C (recording of the telephone call). Deputy Akshar attested that, consistent with his training, he fired his weapon "until the threat of deadly force was eliminated." Akshar Aff. ¶ 58. He further attested: "I fired my weapon at Scott Brothers because I reasonably perceived the imminent use of deadly force against Deputy Fleming and me. I discontinued my use of deadly force at the moment I determined the threat had been eliminated." Akshar Aff. ¶ 70.

Plaintiff was hit by three or four of the fifteen bullets fired by Akshar. See Terzian Aff, Ex. B (Defendants' forensic pathologist's expert report); Floriani Aff. Ex D (Plaintiff's hospital discharge summary submitted by Plaintiff). One struck Plaintiff in the head just above his left eye; one struck him in his left wrist; one struck him in the left thigh; and one, or possibly a bullet fragment or secondary projectile, grazed him on the posterior lower thorax. Terzian Aff, Ex. B; Floriani Aff. Ex D. Plaintiff suffered injuries including coma, permanent blindness in both eyes, partial loss of hearing, and cognitive difficulties. PSMF ¶ 96. As a result, Plaintiff is unable to recall the events of the shooting. See PSMF ¶¶ 35-

---

[2]Deputy Akshar had a 40-caliber Glock pistol which holds 15 rounds in the magazine and one round in the chamber, Akshar Aff. ¶ 66, but, at the time of the shooting, he had only 15 rounds in the weapon because he "had dispatched a deer a few days prior to the incident." Id. ¶ 67.

6

38.

On March 22, 2006, after the instant action was commenced, Plaintiff was charged with, *inter alia*, Menacing in the Second Degree in violation of New York Penal Law Section 120.14(1) based upon the events of February 7, 2005. See Perticone Aff. Ex. C (Indictment 06-173, People of the State of New York vs. Scott Brothers).[3] On January 27, 2007, while represented by legal counsel, Plaintiff entered an Alford/Serrano-type plea of guilty to the charge of Menacing in the Second Degree. See Matter of Silmon v. Travis, 95 N.Y.2d 470, 472 (2000)("In North Carolina v. Alford, 400 U.S. 25 [1970], the United States Supreme Court recognized that an accused may voluntarily enter a guilty plea without admitting culpability when there is strong record evidence of actual guilt."); People v. Munck, 278 A.D.2d 662, 663 (3rd Dept. 2000)("As long as the court takes 'precautions to assure that the defendant is aware of what he is doing,' it may accept a guilty plea even though defendant's recitation of the underlying facts fails to establish all the elements of the crimes to which the defendant has pleaded guilty.") (quoting and citing People v. Serrano, 15 N.Y.2d 304, 310 (1965)). During the plea colloquy, the county court judge advised Plaintiff of the rights he was giving up by pleading guilty, and inquired whether

---

[3] A person is guilty of menacing in the second degree when:

1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

N. Y. Penal L. § 120.14(1). Menacing in the Second Degree is a class A misdemeanor. Id.

Plaintiff was also charged with six felony counts of Perjury in the First Degree in violation of New York Penal Law § 210.15 in connection with sworn statements he made in the instant proceeding, and with one count of Criminal Possession of a Weapon in the Fourth Degree in violation of New York Penal Law § 265.01(2), also a class A misdemeanor. See Perticone Aff. Ex. C (Indictment 06-173, People of the State of New York vs. Scott Brothers.

Plaintiff was pleading guilty freely and voluntarily. Perticone Aff. Ex. D (plea trans.), pp. 3-5. As to the facts underlying the crime, the following allocution took place:

> The Court: The allegation is that you did by displaying a weapon, a shotgun, did place a deputy sheriff in fear of physical injury. The allegation being that you had a weapon and that you were using it and pointing it in such a manner intentionally that you were placing this deputy in fear he might be injured as a result of all this, of these events. That's what you are pleading guilty to.
>
> Do you understand that, sir?
>
> Brothers: Yes, your Honor.
>
> The Court: Your attorney has told me that you can't recall these events. Is that correct?
>
> Brothers: Yes.
>
> The Court: But your attorney has related to you the facts and circumstances that are set forth in the police report?
>
> Brothers: Yes, your Honor.
>
> The Court: All right. You are satisfied that since you cannot recall, you are satisfied at this point that there is reasonable basis to conclude that, in fact, you were doing these things, you just can't recall it, is that correct?
>
> Brothers: Yes, your Honor.

Id. pp. 4-5. The County Court accepted his plea of guilty and entered a judgment of conviction on the menacing count in satisfaction of all counts in the Indictment.

In the Complaint, Plaintiff asserts excessive force claims pursuant to 42 U.S.C. § 1983 contending that Deputy Akshar's actions violated his rights secured by the Fourth, Fifth, and Eighth Amendments. Plaintiff also brings Section 1983 claims against the County of Broome, the Broome County Sheriff's Office, and Broome County Sheriff asserting that Plaintiff's constitutional rights were violated because the County failed to

properly train Deputy Akshar in the County's policy applicable to barricaded persons. Plaintiff brings state common law negligence claims against all defendants based upon the events of February 7, 2005.

## III. STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see <u>Tenenbaum v. Williams</u>, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the movant is able to establish a basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. <u>Abramson v. Pataki</u>, 278 F.3d 93, 101 (2d Cir. 2002). However, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in

9

his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998). With this standard in mind, the Court will address Defendants' motion.

## IV. DISCUSSION

### a. Fifth, Eighth Amendment and Fourteenth Amendment Claims

Plaintiff has not opposed that portion of Defendants' motion seeking to dismiss the claims brought pursuant to the Fifth, Eighth, and Fourteenth Amendments. The failure to oppose a portion of a motion seeking to dismiss a claim is deemed abandonment of the claim, see Rizzo-Puccio v. College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000)(claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned), and, in the Northern District of New York, is deemed consent to granting the motion. See Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.); Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999) (McCurn, S.J.). Plaintiff's failure to oppose these portions of Defendants' motion is deemed implicit consent to dismissal of these claims.

Further, these claims are subject to dismissal for independent reasons. Plaintiff's claim under the Eighth Amendment is not actionable because the events giving rise to this lawsuit did not occur after Plaintiff had been convicted of a crime or while in post-conviction custody. See Whitley v. Albers, 475 U.S. 312, 318 (1986). Plaintiff's substantive due process claims brought under the Fifth and Fourteenth Amendments are not actionable because (1) his claim of excessive force is governed by the specific Fourth

10

Amendment excessive force standard, Graham v. Connor, 490 U.S. 386, 394 -95 (1989); Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998)( "excessive force used by officers arresting suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process."); see also County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998)("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")(internal quotation marks and citations omitted), and (2) his claims sounding in negligence are not "constitutionally cognizable under substantive due process." Daniels v. Williams, 474 U.S. 327, 331 (1986).

Accordingly, Plaintiff's claims under the Fifth, Eighth, and Fourteenth Amendments are dismissed. See Brown v. Doe, 2 F.3d 1236, 1242 n. 1 (2d Cir. 1993) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.  The Due Process Clause governs claims arising in the pre-trial detention context.  After conviction, the Eighth Amendment serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.") (internal citations and quotation marks omitted).

### b.  Fourth Amendment Excessive Force Claim

In effectuating a seizure, the Fourth Amendment allows a police officer to "use only such force as is objectively reasonable under the circumstances." O'Bert ex rel. Estate of

11

O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003)(citing Graham, 490 U.S. at 397).

> With respect to deadly force in particular, "an officer's decision to use deadly force is objectively reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 762 (2d Cir. 2003) (internal quotation omitted); see also Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). In all cases, the reasonableness of the officer's decision to use force in effectuating a seizure "depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." Cowan, 352 F.3d at 762 (internal quotation omitted).

Nimely v. City of New York, 414 F.3d 381, 390-91 (2d Cir. 2005). "In this inquiry, courts must be cognizant of the fact that the officers are often making split-second judgments in tense, uncertain, and rapidly evolving circumstances." Woodward v. Town of Brattleboro, 148 Fed. Appx. 13, 2005 WL 2019990 at *1 (2d Cir. Aug 23, 2005)(unpublished decision)(citing Graham, 490 U.S. at 396-97 and O'Bert, 331 F.3d at 36). "Furthermore, it is irrelevant that the officer may have negligently helped create the deadly circumstances; only the circumstances immediately prior to and at the moment of the deadly force are relevant." Id. (citing Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996)).

While Plaintiff attempts to raise a question of fact as to whether he sat up and pointed the shotgun at Deputy Akshar on February 7, 2005,[4] Plaintiff's Alford/Serrano plea

---

[4] Plaintiff presents the affidavit from Henry C. Branche who purports to be an expert in "police practices and procedures." Branche Aff. ¶ 1. Mr. Branche opines that based upon the nature and location of Plaintiff's wounds, Plaintiff could not have been positioned as ascribed by Deputy Akshar at the time of the shooting. Id. ¶¶ 42-44. Defendants question the admissibility of Mr. Branche's opinion testimony on this motion. See B.F. Goodrich v. Betkoski, 99 F.3d 505, 525-237 (2d Cir. 1996)("[A] court can only consider the affidavit of an expert witness on a motion for summary judgment if that expert's testimony would be admissible at trial."). Branche, a former New York City Police Sergeant who retired some thirty years before the event in question, see Anderson v. Muniz, 125 A.D.2d 281, 282 (2nd Dept. 1986)(refusing to qualify

(continued...)

to the charge of Menacing in the Second Degree in violation of New York Penal Law Section 120.14(1) collaterally estops him from denying that he intentionally pointed the shotgun at Deputy Akshar in such a manner as to put Deputy Akshar in fear for his physical safety.  Diggs v. New York Police Dept., 2005 WL 3533158, at * 2 (E.D.N.Y. Dec. 22, 2005)("The doctrine of collateral estoppel 'applies when § 1983 plaintiffs attempt to relitigate in federal courts issues decided against them in state criminal proceedings.'")(quoting Allen v. McCurry, 449 U.S. 90, 102 (1980)); see Matter of Silmon, 95 N.Y.2d 475;[5]  Merchants Mut. Ins. Co. v. Arzillo, 98 A.D.2d 495, 496 (1984)("[W]e conclude that the doctrine of collateral estoppel applies to defendant's Serrano plea of

---

[4](...continued)
Branche as an expert in the area of police safety procedures), provides no indication of any medical training or any current training, experience, education or other qualification that would provide the basis for an expert opinion on forensic crime scene reconstruction or forensic pathology. See Branche Aff. Ex. A (curriculum vitae).  Further, Branche did not review the available medical records or scientific tests, but instead bases his opinion as to the nature of the wounds on the report prepared by the New York State Police investigator who investigated following the shooting. Under these circumstances, Branche's testimony as to Plaintiff's position at the time he was shot would not be admissible. See Fed. R. Evid. 702; Kumho Tire v. Carmichael, 526 U.S. 137, 150 (1999).  It is also important to note that Defendants' pathologist, a physician licensed to practice medicine in New York and who holds Board certifications from the American Board of Pathology "in both anatomical and clinical pathology, as well as forensic pathology," Terzian Aff. ¶¶ 1-2, and who did review the available medical records as well as the report prepared by the New York State Police investigator, opines in his expert report that:

> The pattern of gunshot wounds received by Mr. Brothers is entirely consistent with the statements made by Deputy Akshar.  Scott Brothers was initially positioned with his left side toward the shooter, and rotated toward his right side as he was struck by the four bullets.

Id. Ex. B. ¶ 7.

[5]As explained by the New York Court of Appeals in Matter of Silmon v. Travis:

> In New York, [an Alford] plea is allowed only when, as in Alford itself, it is the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt. While Alford pleas are rare, from the State's perspective they are no different from other guilty pleas; it would otherwise be unconscionable for a court to sentence an individual to a term of imprisonment.  In fact, this Court has recognized that an Alford plea may generally be used for the same purposes as any other conviction. Like any other guilty plea, it may be used as a predicate for civil and criminal penalties.

95 N.Y.2d at  475 (citations omitted).

13

guilty and that the plaintiff is entitled to summary judgment on the question of defendant's liability for civil money damages."); Kuriansky v. Professional Care, Inc., 158 A.D.2d 897, 897 (3rd Dept. 1990)("In order to invoke the doctrine of collateral estoppel the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. A plea of guilty, even a Serrano plea in which a defendant's version differs from the crime charged but he chooses not to contest the underlying facts, can have collateral estoppel effect.")(quotation marks and citations omitted); People v. J.G., 171 Misc.2d 440, 445 (N.Y. Sp. Ct. 1996)("When a defendant enters an Alford-Serrano plea, although he is not admitting to committing the crime in question, that conviction can still be used against him. For example, a criminal conviction is conclusive proof of the underlying facts in a subsequent civil action even if that conviction results from an Alford-Serrano plea."). Plaintiff's conduct on February 7, 2005 was at issue in both the criminal and present proceeding, it was litigated and decided in the criminal matter, Plaintiff had a full and fair opportunity to litigate the issue of his conduct in the criminal matter, and his conduct was necessary to support the judgment finding that he had in fact committed the crime of Menacing in the Second Degree in violation of New York Penal Law Section 120.14(1). Diggs, 2005 WL 3533158, at * 4. Unlike most criminal defendants, Plaintiff had the opportunity prior to his guilty plea to gain expansive discovery regarding the events of February 7, 2005 through the instant civil proceeding. Under these circumstances, Plaintiff is collaterally estopped from denying that he intentionally pointed a shotgun at Deputy Akshar on February 7, 2005 in such a way as to put Deputy Akshar in fear for his physical safety. Diggs, 2005 WL 3533158, at *

14

3 ("With regard to an excessive force claim, the doctrine of collateral estoppel would bar such a claim 'if the facts actually determined in the plaintiff's prior criminal conviction . . . necessary to [that] judgment . . . are incompatible with the claim of excessive force being raised in the subsequent civil suit.'")(quoting Allison v. Farrell, No. 97-2247, 2002 U.S. Dist. LEXIS 975 (S.D.N.Y. Jan. 22, 2002) in turn quoting Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) (per curiam) ); see Allstate Insur. Co. v. Zuk, 78 N.Y.2d 41, 45 (1991) ("In limited circumstances, a particular issue expressly or necessarily decided in a criminal proceeding may be given preclusive effect in a subsequent affected civil action. Parties may avail themselves of collateral estoppel if the issue is identical in both actions, necessarily decided in the prior criminal action and decisive in the civil action, provided, however, that the party ousted from a day in court by application of collateral estoppel had a full and fair opportunity in the prior action to litigate the now-foreclosed issue.")(citation omitted); D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (1990) ("[T]his Court has recognized that, in appropriate situations, an issue decided in a criminal proceeding may be given preclusive effect in a subsequent civil action."); Olsson v. MacDonald, 16 A.D.3d 1017, 1017 (3rd Dept. 2005)("The doctrine of collateral estoppel may apply when there is an identity of issues and the party to be precluded from relitigating an issue . . . had a full and fair opportunity to contest the prior determination. A party in a civil action may be collaterally estopped from challenging liability when that party has pleaded guilty to criminal charges addressed to the same incident.")(quotation marks and citations omitted).

There is no genuine dispute that, at the time of the shooting, Plaintiff and Deputy

Akshar were in close quarters, Plaintiff was holding a shotgun and repeatedly refused the deputies' commands to put down the weapon, Plaintiff was emotionally distraught, Plaintiff was believed to be intoxicated or under the influence of drugs, and Plaintiff had expressed suicidal intentions both through his actions and statements. When adding to this scenario the fact that Plaintiff abruptly and intentionally pointed his shotgun at Deputy Akshar in such a manner as to put Aksher in fear of physical injury, no reasonable fact finder could conclude that it was unreasonable for Deputy Akshar to employ deadly force to defend himself and Deputy Fleming. See Diggs, 2005 WL 3533158, at * 4 ("If a suspect threatens an officer with a weapon, the officer may use deadly force in response.")(citing, inter alia, Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)); Estate of Kenneth Jackson v. City of Rochester, 705 F. Supp. 779, 783 (W.D.N.Y. 1989)( "[I]t was objectively reasonable for [Police Officer] Gonzalez to use deadly force in defense of Jackson's life-threatening actions."). The uncontested facts demonstrate that the threat to Deputy Akshar was of such immediacy that there existed no opportunity to take a less drastic measure, such as firing a warning shot. Still further, there is insufficient evidence upon which to conclude that the deadly threat posed by Plaintiff dissipated before Deputy Akshar shot each of the 15 bullets in his magazine over the 5-second period from onset of the threat until Plaintiff "let[] out a moan . . . [and] his body and arms flail[ed] to his right." PSMF ¶ 42. Thus, there is no basis to conclude that Deputy Akshar used more force than was reasonable in the face of the situation he confronted. The Court finds that Plaintiff's constitutional rights were not violated by Deputy Akshar's actions on February 7, 2005. Accordingly, all claims against Deputy Akshar brought pursuant to 42 U.S.C. § 1983 are dismissed.

### c. Monell Claims

Having found that Deputy Akshar did not violate Plaintiff's constitutional rights by the use of excessive force on February 7, 2005, Plaintiff's claims against Sheriff David E. Harder in his official capacity, the Broome County Sheriff's Office, and the County of Broome asserting an unconstitutional policy of failing to train its officers must also be dismissed. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (*per curiam*) (municipal liability does not lie where alleged constitutional injury is caused solely by named individual defendant who is found not liable, even where "departmental regulations might have authorized the [unconstitutional practice]"); Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.")(citing Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) & City of Canton v. Harris, 489 U.S. 378 (1989)); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001) ("Following Heller, we have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making the arrest did not violate the plaintiff's constitutional rights.").

### d. Supervisory Liability Claims

All Section 1983 claims against Sheriff David E. Harder in his individual capacity are dismissed because Plaintiff suffered no constitutional deprivation and because Plaintiff has admitted that Harder "was not personally involved in the events leading up to the shooting, either directly or in a supervisory capacity." DSMF ¶ 50; PSMF ¶ 50; see Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir. 2003).

### e. Supplemental State Law Claims

The case was commenced pursuant to the Court's federal question jurisdiction, and diversity of citizenship does not exist. See Compl. ¶¶ 2-33. All claims raising a federal question have now been dismissed. When "a federal court dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction . . . ." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004), cert. denied, 544 U.S. 1044, 125 S.Ct. 2270, 161 L.Ed.2d 1080 (2005). The "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Having dismissed all federal claims, and recognizing the important state interests raised by Plaintiff's claims of negligence and Defendants' arguments of state law immunity, the Court declines to exercise supplemental jurisdiction over the supplemental state law claims. Accordingly, these claims are dismissed with leave to re-file in state court.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED. All claims brought pursuant to 42 U.S.C. § 1983 are dismissed. The Court declines to exercise supplemental jurisdiction over claims brought pursuant to state commons law, and these claims are dismissed without prejudice to refiling in state court.

**IT IS SO ORDERED**.

DATED: July 10, 2007

Thomas J. McAvoy
Senior, U.S. District Judge

18

19